Patric A. Lester (SBN 220092)
pl@lesterlaw.com
Lester & Associates
5694 Mission Center Road, #358
San Diego, CA 92108
Phone: (619) 283-6078
Fax: (314) 241-5777

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES T. CANTWELL, III, | Case No. **'13CV2872 WQHBLM** |
| Plaintiff, | COMPLAINT |
| vs. | JURY TRIAL DEMANDED |
| PRIDE ACQUISITIONS, LLC, | |
| Defendant | |

## INTRODUCTION

1.      This is an action for actual damages, statutory damages, attorney fees and costs brought by an individual consumer, James T. Cantwell, III, (hereinafter "Plaintiff") against Pride Acquisitions LLC (hereinafter "Pride" or Defendant") for violations of the Fair Debt Collection Practices Act, (hereinafter "FDCPA") and the Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1788 et seq. (hereinafter "the Rosenthal Act") which prohibit debt collectors from engaging in abusive, deceptive and unfair practices. All undesignated section references to §1692 are to the FDCPA and to section 1788 are to the Rosenthal Act.

2.      The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasion of individual

privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

3.      The California legislature has determined that the extension of consumer credit through banking and business transactions is dependent upon the collection of just and owing debts, yet unfair or deceptive collection practices undermine the public confidence essential to the continued functioning of a sound credit system. The Legislature thus further determined the need to ensure that debt collectors exercise their responsibility with fairness, honesty and due regard for the debtor's rights, and that debt collectors be prohibited from engaging in unfair or deceptive acts or practices.

4.      Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel (which Plaintiff alleges on personal knowledge) and allegations of jurisdiction.

5.      An understanding of the intentional and premeditated manner by which Pride goes about collecting consumer debts, such as the debt allegedly owed by Plaintiff (the pattern and practice of Pride's business), is necessary to understand the substantive claims set forth by Plaintiff herein. The factual allegations contained in Plaintiff's Complaint are probative of Pride's knowledge and intent relative to the actions taken against Plaintiff pursuant to Rule 404(h) of the applicable Federal Rules of Evidence. *Webster v. Nations Recovery Ctr., Inc.*, No. CIV.A. 09-CV-01685-W, 2009 WL 2982649 (D. Colo. Sept. 15, 2009)

6.      Portfolios of consumer debts, primarily credit card debts of often less than $10,000.00, are bundled and packaged as assets to be sold in the secondary market to debt collectors after the original creditor ceases collection efforts or otherwise charges-off the accounts. See e.g., FEDERAL TRADE COMMISSION, COLLECTING CONSUMER DEBTS: THE CHALLENGES OF CHANGE, A WORKSHOP REPORT

13 (Feb. 2009) [hereinafter referred to as "Workshop Report"]; and UNITED STATES GOVERNMENT ACCOUNTABILITY OFFICE, CREDIT CARDS: FAIR DEBT COLLECTION PRACTICES COULD BETTER REFLECT EVOLVING DEBT COLLECTION MARKETPLACE AND USE OF TECHNOLOGY 7 (Sept. 2009) [hereinafter referred to as "GAO Report"] The citations contained herein to the reports referred to as Workshop Report, GAO Report, DBA Comments, and Broken System establish and support the plausibility of the factual allegations to which each such reference applies, and to provide a beginning point for discovery. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).

7.     Pride then claims to step into the place of the original creditor.

8.     Pride is allegedly in the business of buying such portfolios of consumer debts that are in default and as such is a debt buyer.

9.     These portfolios of consumer debts are sold at deep discounts from the balances owed to the original creditor. In some cases, such portfolios of consumer debts are purchased for as little as $.025 cents on the dollar.

10.     As part of the life cycle of consumer credit, Pride, after allegedly purchasing such a portfolio of consumer debts, then attempts to collect the entire balance owed to the original creditor in an attempt to realize a profit.

11.     However, when Pride purchases such a portfolio of consumer debts at such low prices, it receives virtually no information regarding the alleged debts from the original creditor. Typically, Pride receives little more from the original creditor than a Bill of Sale and a computerized summary containing limited information about the consumers, the accuracy and veracity of which is unknown to the Pride. See Workshop Report, supra, at 22. Given the deeply discounted price paid, the accuracy and veracity is naturally suspect to any reasonable person.

12.     The little information obtained by Pride through the purchase of a portfolio of consumer debts is not sufficient to establish the validity of the debt, or Pride's ownership of the debt nor is it sufficient to support a California court finding that the

consumer is liable to the Pride for anything. The seller's records are, at best, inadmissible hearsay under applicable California law.

13. Pride is not allowed to, among other things, threaten to file a lawsuit against the consumer when it does not intend to actually prosecute the suit through to trail as such representation would be made in violation of the FDCPA's ban on false, misleading or deceptive communications. See 15 U.S.C. §1692(e)(5); *Brown v. Card Member Services Center,* 464 F.3d 450 (3rd Cir. 2006) The citations contained herein to specific statutes and cases are included to aid the reader in understanding exactly what Plaintiff is claiming herein (or, in the case of the following paragraph, what the Plaintiff is not claiming).

14. The mere act of filing a lawsuit when Pride does not intend to prosecute the suit through trial does not alter the fact that the threat to file a lawsuit is hollow and actionable.

15. Filing a state court collection lawsuit is not, by itself, a violation of the FDCPA so long as the lawsuit is filed in good faith, even if Pride knows it does not possess the admissible evidence it needs to establish its claims *at the time the collection lawsuit is filed*. (emphasis added) See *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324 (6th Cir. 2006); *Deere v. Javitz, Block & Rathbone, LLP,* 413 F.Supp.2d 866 (S.D. Ohio 2006); *Gonzalez v. Erskine,* WL 6822207 (S.D. Fla. 2008).

16. However, the hundreds of state court collection lawsuits commenced in California by Pride are not filed in good faith. Pride's purpose in bringing such collection lawsuits, as well as the state court action which is the subject of this complaint, is far more than merely filing an action without possession, at the time of filing, of the complete "paper trail" or admissible evidence needed to prove its claims at trial.

17. It is true that Pride does not have the necessary competent and admissible evidence substantiating its claims at the time it files its collection lawsuit; however, the fact concealed by Pride is that it does not intend to ever obtain any competent and

admissible evidence to establish its claim.

18.     Pride's purpose is, in reality, to use these collection lawsuits as a tool to coerce payment from the consumer. The pattern and practice of Pride's business, as it relates to collection lawsuits, is designed to coerce from the consumer payment of the alleged debt by preying upon the consumer that Pride perceives to be ill-informed regarding the validity of the debt by targeting the consumer's send of fear and anxiety, his sense of embarrassment, his lack of understanding of Pride's business, and his feeling of helplessness when being pursued by a participant in the multi-billion dollar per year debt collection industry such as Pride. See BARBARA SINSLEY, FED. TRADE COMM'N, DBA INTERNATIONAL'S COMMENTS RELATED TO DEBT COLLECTION FOR THE FTC DEBT COLLECTION WORKSHOP, 2-3, (June 2, 2007) [hereinafter referred to as "DBA Comments"]; GAO Report, supra, note 1, at 7.

19.     Pride's modus operandi, the pattern and practice of its business, is to engage in abusive, scattershot litigation by filing of hundreds of collection lawsuits against California consumers each year in order to obtain default judgments and coerce settlement agreements from unrepresented consumers.

20.     There was no expectation of any viable challenge to the inapplicable and unprovable causes of action. Even in the highly unlikely event that there was, Pride could and would simply dismiss the case, with minimal consequences of the loss of a filing fee and if they did not refile, the costs of the debt (here possibly 2% of $3,250.00 or $65.00). However, they could always refile and again pursue the deceptive practices.

## JURISDICTION

21.     Jurisdiction arises pursuant to 28 U.S.C. § 1391, 1337, 15 U.S.C. § 1692(k)(d), and 47 U.S.C. § 277 et seq. and 28 U.S.C. § 1367 for supplemental state claims.

22.     As Defendant does business in the state of California, and committed the acts that form the basis for this suit in the state of California, this Court has personal jurisdiction over Defendant for purposes of this action.

## THE PARTIES

23.     Plaintiff is a natural person residing in San Bernardino County, California.

24.     Plaintiff is a "consumer" within the meaning of § 1692a(3) being a natural person purportedly obligated to pay a "debt" or "consumer debt", as defined respectively, in § 1692a(5) and Civil Code section 1788.2(f) and purportedly obligated to pay a credit card debt to Chase Bank USA N.A. (hereinafter "Debt") which allegedly was in default at the time of Defendants violations herein.

25.     Plaintiff is a "debtor" as that term is defined by Civil Code section 1788.2(h).

26.     Defendant is a person and/or business entity who uses instrumentalities of interstate commerce in a business the principal purpose of which is the collection of debts, or who regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is therefore a debt collector as that phrase is defined by § 1692a(6).

27.     Defendant in the ordinary course of business, regularly, on behalf of themselves, or others, engage in debt collection as that term is defined by Civil Code section 1788.2(b), and is therefore a debt collector as that term is defined in Civil Code section 1788.2(c).

## FACTUAL ALLEGATIONS

28.     Prior to January 31, 2010, the alleged debt was allegedly assigned, placed or otherwise transferred to Defendant for collection. Plaintiff denies a valid assignment took place or that any Defendant was the legal owner of the alleged debt.

29.     At all times herein, Defendant, was attempting to collect the alleged debt from Plaintiff, that debt was a debt as defined by § 1692a (5) of the FDCPA.

30.     At all times herein, Defendant, was attempting to collect the alleged debt, from Plaintiff, that debt was a consumer debt as defined by section 1788.2(f) of the Rosenthal Act. At various and multiple times prior to the filing of the instant complaint, including within one (1) year preceding the filing of this complaint, Defendant contacted

Plaintiff in attempts to collect the debt.

31.    Defendant filed suit, on December 3, 2012, against Plaintiff in the Superior Court of California, attempting to collect the debt (hereinafter "State Court Action"). The State Court Action contained and was a communication within the meaning of §1692a(2) of the FDCPA.

32.    Plaintiff was required to hire a lawyer and incur expenses in defending the State Court Action.

<u>**The Delaware Three Year Statute of Limitations**</u>

<u>**Applied to the State Court Action**</u>

33.    The Credit Card Agreement alleged to exist between Cantwell and Chase Bank USA, NA, states in relevant part as follows:

> Law That Applies. The laws of the United States of America and the State of Delaware apply to this Agreement and to your use of your Card, your Checks, and your Account.

34.    The last payment on the debt was June 2009, the date that the causes of action in the state court complaint accrued.

35.    June 2009 is more than three years from the filing of the state court action.

36.    Pride's claims against Cantwell accrued more than three years prior to the filing of the state court action.

37.    Pride filed the state court action more than three years after the applicable statute of limitations had run.

38.    Pursuant to *Hambrecht & Quist Venture Partners v. American Medical Int'l Inc*, 38 Cal. App. 4th 1532, 1549 (1995), choice of law clauses, including those choosing non-California statutes of limitations are enforceable, and in particular, those choosing Delaware Code § 8106 are enforceable. The court in *Hambrecht* found "In this case, the choice-of-law provision results in the application of Delaware's three-year statute of limitations ( Del. Code Ann. tit. 10, § 8106 (1975) to claims (for breach of contract and declaratory relief) that otherwise would be governed by California's four-year statute of

limitations (Code. Civ. Proc., § 337, subd. 1). This result does not conflict with any fundamental policy of California. If the parties to a contract can shorten California's four-year limitations period to three months, we perceive no obstacle to applying a foreign state's three-year statute of limitations. Accordingly, the choice-of-law clause is enforceable. *Hambrecht & Quist Venture Partners v. American Medical Int'l Inc*., supra.

39.     Pursuant to 10 Del. Code § 8106, the Delaware statute of limitations for breach of a credit card agreement, as well as, open book and account stated is three years and is applicable.

40.     Under *Resurgence Financial, LLC v Chambers*, 173 Cal. App. 4th Supp. 1 (2009), a state court action based on a credit card, with a credit card agreement bearing a Delaware choice of law clause, was subject to Delaware law, and in particular to Delaware Code § 8106, Delaware's three year statute of limitations.

## The Delaware Statute was not Tolled

41.     There was no tolling of the above three year statute of limitations, as both California and Delaware prohibit tolling of Delaware Code § 8106 where the defendant is not a resident of the state of Delaware.

42.     The *Resurgence* court further found that Delaware's tolling statute, Delaware Code § 8117, did not apply, as the defendant was not a Delaware resident, and therefore application of the tolling statute would abrogate the statute of limitations, an absurd result. The *Resurgence* Court relied in part on another ruling from the Supreme Court of Delaware, in *Hurwitch v. Adams*, 52 Del. 247 (1959). In *Hurwitch*, the Court found that Delaware's tolling statute did not apply to non-residents of Delaware.

43.     Cantwell is not and was not at any time a resident of the state of Delaware, nor a defendant in any action in the state of Delaware, nor a party in an action in the state of Delaware, nor subject to service process in Delaware for any purpose.

## No Federal Statute of Limitations Exists That Pre-Empts Delaware's

44.     Under *Hambrecht*, state common law theories such as breach of contract and the like are subject to state law, and therefore the a state law statute of limitations,

and are not subject to a federal state of limitations, whatever that maybe, as they are not federal causes of action.

45.     Under *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), federal courts exercising jurisdiction of state law claims, such as the Rosenthal Act claim at issue here, must follow state substantive law, and may not impose federal law. Under *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945), that substantive law includes the applicable statute of limitations.

46.     There is no such thing as a federal statute of limitations applicable to a state court dispute, whether in federal court or state court; the outcome must be the same under *Guaranty Trust*, supra.

## Unlawful Interest Rate

47.     Defendant misrepresented the character, amount and legal status of the debt.

48.     Defendant attempted to collect interest, fees or other charges from Plaintiff that were not expressly authorized by the agreement creating the debt or otherwise permitted by law.

49.     Defendant collected or attempted to collect unlawful interest.

50.     In the State Court Action, Defendant claims a right to a fixed annual interest rate of 7 % percent.

51.     The representation that the Plaintiff had previously agreed to pay a fixed rate of 7 % percent per annum interest was untrue. Through this representation, Defendant used a false, deceptive, or misleading representation or means in connection with the collection of a debt.

52.     Additionally, there is no applicable statute that gives rise to a right to 7 % percent fixed interest.

53.     Defendant cannot point to any contract giving rise to a right to that fixed rate of interest. All of the documents provided by Defendant, in the State Court Action litigation, clearly provide for a variable rate.  There is no basis in any document

provided by Defendant to believe that Defendant or any other party, including Chase Bank USA N.A., ever possessed the right to charge Plaintiff a fixed rate of interest of 7 % percent.

54.    Defendant fabricated a claim to a fixed interest rate of 7 % percent in order to maximize their profits.

55.    By acting as stated above Defendant committed clear misrepresentations, and violations of § 1692e, § 1692e2(A), § 1692e(10), § 1692f and § 1692f(1) of the FDCPA.

56.    These misrepresentations were material. See *Donohue v. Quick Collect, Inc.* (9th Cir. 2010) 592 f 3d 1027, 1034 in which the court stated the rule clearly: "Misrepresenting the interest rate of a debt, or attempting to collect an inflated interest rate, is a violation of the FDCPA's, as long as the misrepresentation is material.", citing *Hahn V Triumph Partnerships, LLC.* (7th Cir. 2007) 557 F 3d 755 , 757, in which the Court found that "[a]pplying an incorrect rate of interest would lead to a real injury…".

## Pride Misstated the Legal Status of the Alleged Debt

57.    Pride, in its complaint, misstated the legal status (that Pride owns the debt or that the state cause of action was filed within the statute of limitations) of the alleged debt and, in the face of the consumer's denial of the same, Pride maintained its allegations despite the fact that it did not have evidence of its ownership of the debt, or how the amount of money demanded from Cantwell was calculated or knowledge of the validity of the alleged debt or the existence of sufficient facts that would substantiate its causes of action. Neither did it take, or intend to take, any reasonable steps to ensure its ownership or the legal validity of the alleged debt, the causes of action alleged in the state court action or discover the existence of sufficient facts that would substantiate its causes of action. As such, Pride misrepresented the character, amount, and legal status of the alleged debt in violation of the FDCPA. See §1692e(2)(A); *Williams v. Javitch, Block & Rathbone*, supra; *Gigli v Palisades Collection, LLC*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra; *Simmons v. Portfolio Recovery Assoc., et al*, supra.

1

**Pride Threatened to Take an Action that it Did Not Intend to Take**

2    58.    Pride, by bringing and maintaining its collection lawsuit, represented to

3  Cantwell (and to the court) that it intended to prove its claims at trial and that the state

4  cause of action was filed within the applicable statute of limitations.

5    59.    However, Pride's actual intention was not to prove its case, but, rather, to

6  use its collection lawsuit to obtain a default judgment against Cantwell or as a tool to

7  coerce payment from Cantwell; as such, Pride's act of bringing and maintaining its

8  collection lawsuit was taken in violation of the FDCPA as it was a threat to take an

9  action (i.e. proving its case at trial) that Pride did not have the ability or the intent to

10  take. See 15 U.S.C. §1692e(5); Federal Trade Comm'n Commentary to the FDCPA, 53

11  Fed. Reg. 50097, 50106 (1988); *Brown v. Card Member Services*, supra; *Kuria v.*

12  *Palisades Acquisition XVI, LLC*, 752 F.Sup.2df 1293 (N.D. Georgia, Atlanta Division

13  2010).

14

**Pride Used False, Deceptive and Misleading Means in**

15

**Connection with a Debt Collection**

16    60.    Pride brings and maintains its collection lawsuits in violation of the FDCPA

17  as it is a false, deceptive and misleading means taken by Pride in connection with

18  collecting a debt. See 15 U.S.C. §1692e(10); *Williams v. Javitch, Block & Rathbone*, 480

19  F.Supp.2d 1016 (S.D. Ohio); *Gigli v. Palisades Collection, LLC*, 2008 WL 3863295

20  (M.D. Pa 2008); *Kuria v Palisades Acquisition, LLC*, supra.

21

**Pride Used an Unfair and Unconscionable Means of Collecting a Debt**

22    61.    Pride's intention in filing its collection lawsuit was not to prove its case, but

23  to use the collection lawsuit to obtain a default judgment or as a tool to coerce payment

24  from an unrepresented consumer; an "unfair and unconscionable" means of collecting a

25  debt in violation of the FDCPA. See 15 U.S.C. §1692f; *Williams v. Javitch, Block &*

26  *Rathb*one, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.

27  ///

28  ///

## Pride Attempted to Collect an Amount

## Not Expressly Authorized by an Agreement nor Permitted By Law

62.     Section 1692f of the FDCPA prohibits debt collectors from utilizing "unfair and unconscionable" means to collect a debt. This phrase is "as vague as they come," but it is the FDCPA's backstop, intended to cover actionable debt collection practices that may not be specifically addressed in §1692d and/or §1692e. *Williams v. Javitch, Block & Rathbone*, supra, at 1023.

63.     Pride, in its complaint, sought to recover monies that the consumer would only be liable to pay Pride pursuant to a written agreement and, in the face of the consumer's answer denying that such an agreement exists, Pride maintained its allegation that such sums were due to Pride despite the fact that Pride does not have knowledge of the existence of any such agreement nor does it take, or intend to take, any reasonable steps to prove the existence of such an agreement or if an agreement did exist filing of a lawsuit would be barred by the statute of limitations. As such, Pride attempted to collect an amount not expressly authorized by an agreement or permitted by law in violation of the FDCPA. See §1692f(1); *Gigli v Palisades Collection, LLC*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.

64.     Because of the above violations of the FDCPA and the Rosenthal Act, Plaintiff suffered and continues to suffer from personal humiliation, embarrassment, mental anguish, anxiety, and emotional distress injury and Defendant is liable for Plaintiff's actual and statutory damages, costs and attorney's fees.

65.     Because Defendant violated certain portions of the FDCPA as specifically set out herein, as these portions are incorporated by reference in Civil Code section 1788.17, this conduct or omission also violated the Rosenthal Act.

## FIRST CLAIM FOR RELIEF

## (Violations of the FDCPA)

66.     Plaintiff repeats, re-alleges, and incorporates by reference all the allegations contained in the paragraphs above.

67.     The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above cited provisions of § 1692 et seq.

68.     As result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to § 1692k(a)(2)(A); reasonable attorney's fees and costs pursuant to § 1692k(a)(3) from defendant.

## SECOND CLAIM FOR RELIEF

### (Claim for violations of the Rosenthal Act)

69.     Plaintiff repeats, re-alleges, and incorporates by reference all the allegations contained in the paragraphs  preceding the First Claim for Relief

70.     Defendant's acts and omissions violated the Rosenthal Act including, but not limited to section 1788.17. Defendant's violations of section 1788.17 of the Rosenthal Act (which incorporates several of the provisions of the FDCPA) include, but are not limited to those enumerated in the above First Claim for Relief.

71.     Plaintiff is entitled to statutory damages of $1000.00 under Civil Code section 1788.30(b) for Defendant violations, as enumerated above, of the Rosenthal Act.

72.     Defendant's violations of the Rosenthal Act were willful and knowing, thereby entitling Plaintiff to statutory damages pursuant to section 1788.30(b) of the Rosenthal Act.

73.     Defendant's acts as described above were done intentionally with the purpose of coercing Plaintiff to pay the debt.

74.     As a proximate result of the violations by Defendant of the Rosenthal Act as previously stated, Plaintiff is entitled to any actual damages and statutory damages for discrete violations of  the Rosenthal Act and also an additional $1,000.00 statutory damages for violation of Civil Code section 1788.17, and attorney's fees and costs of this action.

///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant, and for Plaintiff, and prays for the following relief:

(1)     Assume jurisdiction in this proceeding;

(2)     Declare that the Defendant violated the FDCPA;

(3)     Declare that the Defendant violated the Rosenthal Act;

(4)     Award of actual damages, including but not limited to legal fees and costs incurred in defending the State Court Action, in accordance with proof at trial, pursuant to § 1692k(a)(1) of the FDCPA and Civil Code section 1788.30(a) of the Rosenthal Act;

(5)     Award of statutory damages of $1,000.00 pursuant to §1692k(a)(2)(A) of the FDCPA;

(6)     An award of statutory damages of $1,000.00 pursuant to Civil Code section 1788.30(b) of the Rosenthal Act for violation of section 1788.17 of the Rosenthal Act;

(7)     An award of statutory damages of $1,000.00 pursuant to section 1788.30(b) of the Rosenthal Act for violation of Civil Code section 1788.13(c)of the Rosenthal Act;

(8)     Award of the costs of litigation and reasonable attorney's fees, pursuant to § 1692k (a) (3) of the FDCPA and Civil Code section 1788.30(c) of the Rosenthal Act;

(9)     Such other and further relief this court may deem just and proper.

## **TRIAL BY JURY**

75.     Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated December 3, 2013                    **Lester & Associates**
                                          By     s/ Patric A. Lester
                                                 Attorney for Plaintiff,
                                                 E-mail: pl@lesterlaw.com

COMPLAINT